Okay, the next case is number 2011-70-64, Thompson against the Secretary of Veterans Affairs, Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Earl Thompson. The matter in this case involves the Equal Access for Justice Act and whether or not Mr. Thompson below was or was not a prevailing party in his action. The action below was resolved by a joint remand in which we believe the VA implicitly agreed that there had been an error made by the board in the adjudication of the claim. The Veterans Court addressed the question of whether or not its precedent in Clemens did or did not constitute new law, but ultimately decided that the reason that the JMR didn't constitute an admission of error, either implicitly or explicitly, was because the only evidence, excuse me, the only intent evidence was that the board should review the scope of the Clemens decision. But the underlying decision in Clemens was based upon established law, and that established law was that the board was to consider all evidence of all claims. Doesn't it matter what the state of mind was of the parties at the time of the stipulation? Whether or not Clemens created new law is kind of beside the point, the joint remand, because at that time people thought Clemens might create new law, at least. Why mention Clemens? Because it was the newest case on the docket. It was the thing that had focused the particulars of comparing one psychiatric disability to another psychiatric disability. It might be relevant. Let's take the most innocent possible formulation. It might have some relevance to your client's claim. Therefore, let's send the case back to the board for review in light of this new case. Right? I mean, how is that prevailing on the merits? Because he was entitled to consideration of both of the psychiatric disabilities that were raised by the evidence. The board only considered one and not the other, and that was in direct contradiction to the established law that was pre-Clemens. And therefore, the question of the intent to simply examine under Clemens is superficial. The reality was that they had that burden before Clemens existed. And Mr. Thompson had the right to have the board consider all applicable provisions of law and all of the various theories of entitlement to his right to prevail for service-connected compensation, whether it was under Psychiatric Disability A or Psychiatric Disability B. And simply to say that the VA gets immune from liability under EJIA because they made reference to the need to consider this most recent case is to defeat the entire purpose of EJIA. The purpose of EJIA is for the citizen who is required to go to court. There's no dispute here that Mr. Thompson had to go to court. And he prevailed at court because he got the board decision vacated and in order that that decision be re-adjudicated by considering both claims. Now, it's my understanding and consistent with my experience that there are a fair number of remands, many of them pursuant to a joint Moshefer remand going from the veterans court to the board. Back to the board, yes. And my impression also is that it isn't unusual for there to be a let's have the board take another look at this in light of type remand. Sometimes because of new developments, maybe sometimes not. Yes. And the court will typically go along with the party's request in that situation. In that situation, that's a little different from the way we operate here where typically a remand will occur only if you find something went wrong. So, in the CADC vis-a-vis the board, it doesn't require that something have gone wrong. They just want to have another, take another crack at it board, right? But what we're talking about here is an administrative error. I understand. I understand. But what I'm suggesting is my impression is that there are a fair number of cases in which it isn't absolutely clear that there's been an administrative error. But things are a little messy, so let's go ahead and have the board take a crack at this. Well, Frank, Your Honor, I think that's a very generous spin. I'm not saying that's true of this case. No, no. But we have an unusual circumstance in veterans law where we're coming from a non-adversarial system into an adversarial system. We also have a situation in which that non-adversarial system under the case law for both this court and the court below have mandated that special consideration has to be given to claims that are reasonably raised by the evidence. So, there's a special duty here. Now, added to all of that mix is this 7104B reasons or bases, which is, I think, the area that is more consistent with your description, where there's some ambiguity as to how the board explained itself and that, yes, it should go back for another look. But that does not diminish one iota the administrative error on the part of the board because the concession has been made if reasons or bases is the basis for the remand that a new adjudication has to be articulated by the board so that it can meet judicial review, so that the parties understand what it was that the board decided and why, and the court can make that determination. But at the end of the day, whether it's reasons or bases or the failure to apply applicable law, that's error. And that was the error that was established by the agreement of the parties to send this back. Well, let's suppose that maybe you're right and your experience vastly exceeds mine in this area, so you would know. But let's assume that rather than this being a frequent occurrence that we send back what we'll call a no-fault remand. But it does happen from time to time. And if that is true, then that would not be a situation, I would take it, in which the rules that we've come to apply in this area would require an EJA award. Is that right? Well, in this court has established— I'm sorry to interrupt, but if the determination, to be clear, made by the secretary and by the court ultimately was—and agreed to by the veteran— is that this should go back regardless of whether we ultimately think, and without making a determination as to whether there was administrative error. Frankly, Your Honor, I'm not aware of such a circumstance. I've never negotiated a situation in which the parties agree that maybe this needs another look. I don't believe that that is an acceptable basis for the vacating of a board decision. Why would you, sir? I'm just going to say, I think Judge Kasol thinks that it is. I mean, that's the gist of what he said in his opinion. I understand that, Your Honor, except that that seems to me to relieve the court from the burden that it was given by Congress to conduct judicial review. I don't believe there's a no-fault basis for remand. Now, there are bases, such as a change in law, where the law has changed and the board didn't have a chance to apply that. Well, that wasn't the fault of the board, but nevertheless, the veteran is entitled to the benefit of that change in law, so the case goes back. But he's not prevailing because there was an intervening action. We're not talking about an intervening action here. We're talking about a burden that existed on the board at the time in which they made their decision to consider both psychiatric claims, and they didn't do it. They stipulated, the veteran and the board stipulated that the government stipulated the case should go back to the board because they thought there might have, Clemens might have effected the change in law. They cited the Jim Bean case, which has to do with that, so there was a, as it turns out, perhaps a mistaken assumption that the law had changed. Why should the government be punished for that? I understand what the purpose of EJ is, but if you're right, then why would the government ever stipulate anything? Because later on, it could turn out that, well, there wasn't a change in the law, so now we have to pay attorney's fees. I'm just having a problem with it as a matter of policy. And that's why, Your Honor, the difference between whether Clemens did or didn't establish law is pertinent to the outcome of this case. How do you know that in advance? You know that in advance because Clemens was based upon existing law. But maybe in hindsight, we can say that that's the right reading of Clemens. But at the time of the stipulation, if you read the stipulation and then the reference to the Jim Bean case and the language of the stipulation, it certainly looks to me like everybody said, as Judge Bryson said, we don't really know whether Clemens is going to make a difference or not. Let's give it the benefit of the doubt and send it back. But the state of mind of the parties is reflected in the stipulation. They weren't analyzing whether Clemens was new law or not, just saying it might be, let's send it back. So why are we shifting the risk in a situation like that? Well, Your Honor, I can't speak for counsel below. I wasn't counsel below that negotiated the remand. But I can assure you that if I had negotiated the remand, if that were the condition precedent, then we wouldn't be here because the matter would have been litigated and there would have been an ultimate decision by the court on the merits. Having listened to you argue for the last two days, counsel, I totally believe that. But the question, and I mean that as a compliment. I hope so. Your predecessor did what he or she did and the record is what it is. On this record, how is the government at fault to the extent that they should pay fees? But Your Honor, forgive me, I think you're asking for equity for the government. And EJIA is not about equity for the government. No, I guess I'm just trying to think about you want to encourage cooperation. I mean, if you're a judge, that's important. And the parties agree in this particular case that the case should be remanded because there's been intervening case law that may bear on the resolution of the claims. And if you win in this case, and this is beyond your client's rights, but if you win in this case, it discourages that kind of cooperation between counsel. I mean, that just concerns me on a practical level. No, I'm on it. Because the reality is that this carrot is withheld as part of the negotiation. They won't overtly stipulate in certain cases, not in every case. And that becomes the engine that drives the litigation. And it doesn't encourage resolution. Ultimately, the Veterans Court made a prevailing party determination under EJIA. That's now reviewable by this court de novo. So this court gets to take another look at what was the document. That document is to be interpreted one way or the other in terms of whether or not Mr. Thompson was or wasn't the prevailing party. And to me, to get into these other ancillary issues about whether the government is additionally burdened or there's a dampening effect on negotiations, I think are beyond the scope of this appeal. Sorry, go ahead. And that what we're dealing with here is the simple proposition of whether or not there was existing law upon which, had Clemens never been decided, this matter would have had to have gone back. Is it fair to say that your position could be summed up as saying that any time there's a remand, other than because of a change in the law, that there is eligibility for an EJIA? Yes.  Thank you, Your Honor. I end my rebuttal. I'll reserve the balance. Thank you, Mr. Carpenter. Ms. Hollister. May I please report? Prevailing party status requires a remand based upon an alleged error by the board in this case. That's what the standard is. In this case, there was no allegation of error, much less a finding of error by the Veterans Court or a concession of error by the Secretary. Indeed, Mr. Carpenter just admitted that he would have done things differently below. He would have alleged an error. A counsel who was actually representing Mr. Thompson at the time did not allege error. But there's a moment when I don't understand. Instead of the case being over and the veteran losing, now there is an opportunity, an order for further proceedings. That's quite a dramatic difference. And I must say that to the extent that we've been discussing the philosophy of EJIA in the veterans' cases, I would have thought, too, that the government's position in representing the Secretary would be to encourage and facilitate representation of veterans in these, from one viewpoint, small cases. They're very big to the person who is involved, but they are not, if you sat through some of our patent cases, a billion-dollar kind. Your Honor, I don't disagree that the Secretary has an obligation to help represent or to foster the veterans' case. But in this case, the court's case law holds a series of cases, Vaughan, Akers, Kelly, David, all hold that there has to be some sort of allegation of error or finding of error or concession of error when a case is remanded back to the board in order for a prevailing party status to be applied for purposes of EJIA. There are many cases in which the Secretary does concede that there was an error. One example is Clemens. Before Clemens went up to the panel, the Secretary's position was that because there were intertwined claims, it should be remanded back, and there was error. In the Bridell case that was decided in conjunction with Akers, the initial position of the Secretary had been that an existing case required remand to the board, and that was also a concession of error. So the Secretary is not unwilling to concede error when such error has actually occurred. But in this case, both parties in the joint remand acknowledged that a new case had been decided after the board decision was issued. Both parties outlined the holdings in the case. Both cited to the Supreme Court's decision in Jim Beam, as Judge Vogel mentioned, the proposition that a new law must be applied retroactively. And on that basis, the parties moved for remand. Indeed, the application Judge Lance had been a member of the panel that decided Clemens, and Judge Lance's position was that it was new law. So it was not unreasonable for the Secretary and for counsel, for Mr. Thompson, to also take the position that Clemens established new law and to jointly move for remand on that basis. Now, in talking about the various cases from this court that have addressed this issue, you mentioned the Kelly case. And it seems to me Kelly doesn't quite fit into your characterization of that line of cases, because I don't believe in Kelly that there was an acknowledgement by the Secretary or a finding by the CAVC. Ultimately, there was a finding by this court that the ruling was favorable to the veteran. But I don't think there was anything either from the Secretary or from the CAVC. Do you recall differently? I believe in Kelly there was an allegation of error by the claimant. And then there was a motion for remand granted. And in that ultimate motion for remand, the Veterans Court said the board must consider ataxia. The board must consider other diagnoses. So there, there was at least an allegation of error. The Secretary, I think, took a different position. But there was an allegation of error. There was also intervening law in that case. Was the allegation of error in the motion or in the original briefs before the CAVC? Obviously, there's going to be an allegation of error before the CAVC. That's what the appeal is all about. But do you happen to recall – I mean, I don't want to play 20 questions. It's a small detail in the case. But I wonder if you happen to recall. I believe that there are cases divided into two parts. Part of the case is remanded because of the enactment of the VCAA. Mr. Kelly or Ms. Kelly took the position that the other part of the case should also be remanded because there's ataxia. There was a recognition of an ataxia diagnosis in the board decision. I'd have to pull out the case to determine whether or not he actually filed a motion for remand. But I thought he did move for remand. And that was held up because, in the meantime, the law had changed with regards to notices of disagreement. But ultimately, the Veterans Court did find that the board, upon remand, must consider ataxia. We don't have that kind of finding here. Here, the Veterans Court just adopted the party's joint motion for remand, which was based solely on the fact that a new case had come out. So I believe Kelly is distinguishable from this case. I would also note that in the Davis case, the court recognized that in Kelly, the Department of Veterans Affairs had ignored ataxia. There was an actual finding. Here we have no such finding that the board ignored dementia. The parties just note that there was a mention of dementia in the record, and because Clemens seemed to open the door to multiple diagnoses being considered as one claim rather than requiring multiple claims, they said let's send it back for that reason. But there was no concession or even allegation that the board had erred in some way. It was just a matter of Clemens has come out. Let's send it back and see what happens. And I would just, in parting, note that Mr. Carpenter acknowledged that the parties did not know in advance that Clemens was existing law, and then said, well, now we know, so therefore we should all recognize that Mr. Thompson was a prevailing party. That's sort of engaging in revisionist history, because as I mentioned before, not only did the parties not know that Clemens was not new law, but neither did Judge Lance, who had actually been one of the judges, Unless the court has other questions, I would. I'm just trying to sort through these cases. Let me see if you also, as Mr. Carpenter has a lot of experience in this area, how Mr. Carpenter has given his characterization of this, what I call the no-fault remand process, call it a do-over if you like, without attribution of fault. Is it your impression that setting aside the category of cases in which there's been a change in the law, either the enactment of the BCCA or any case law that may have occurred in the interim, is it your impression that that does occur with some frequency, or it is very rare? I can't say for certain. I mean, that scenario that you've laid out does sound, I think I've read about it in cases. Obviously, our position would be that that does not always or even ever establish prevailing party status, but an answer to the question as to whether intervening law is required in order to achieve prevailing party status, in order to not achieve prevailing party status, that's not true. There's the judicial economy basis that was decided upon in Gurley. In Davis, it was ultimately determined that there had been new evidence that was developed that was also a basis for a remand without prevailing party status. So no, you don't just need a new case. And I can envision cases where the Veterans Court would find that maybe something needs to be developed further, but if there's no actual judgment for the claimant or some sort of, as Buckhannon stated, material alteration of the legal relationship of the parties, if there's no actual relief, then there's no basis for prevailing party status. And I understand that the standard is somewhat different when you're dealing with a remand from an administrative agency, but still, there has to be something akin to a judgment on the merits. Or some concession of error. Yes, or a concession of error, which, as I mentioned, the Secretary does do with some frequency. The Secretary is not beyond conceding error when there actually has been one, and that's consistent with Judge Newman's statement about the responsibility of the Secretary. But the concession can be explicit or implicit, we're told. Right, but in this case, the Veterans Court applied the right standard. They said there's been no explicit or implicit. Well, there wasn't even a claim, if I recall your earlier argument. Correct, there was no objection. Let me ask you about that last point, if I may. Thinking about how we should approach the question of what happened here, do you think that the Veterans Court's characterization of what happened before it is entitled to binding effect on us? That is to say, when the Court of Appeals for Veterans Claims says, what we did was not to rule in favor explicitly or implicitly of Mr. Thompson, and moreover, the papers that were filed with us from the Secretary and the claimant were not indicative of either an explicit or an implicit recognition of error. Where does that leave us? What should our standard of review be in looking at that determination by the Court? Your Honor raises a difficult question of jurisdiction, because the Court has in some of these cases said that it looks at the question of prevailing party status de novo, but it also takes care to note that that does not mean under 7292 that you can look at application of lot of facts. That said, in some of these cases, I would cite Kelly as an example. The Court has looked at application of lot of facts. We would take the position that that's beyond the Court's jurisdiction, but we also understand that EJIA is not necessarily looking at the merits of the Veterans Claim below, and I would cite the Court's land decision as an example where in a mandamus proceeding, the Court does look at the facts. That said, I'm not sure that's the position we take. Thank you. Thank you. I'd like to begin with the discussion from the government about allegation of error. I frankly have no idea what the government's talking about. We're talking about an examination of the four corners of the remand. We're trying to determine whether or not you are trying to determine, as you review that joint remand, whether or not there is an implicit concession of error. This allegation of error doesn't really come into the equation. There's no burden on the part of the Veteran to make some sort of allegation of error. That simply, to me, is a red herring. I'd also like to direct the Court's attention to page 40 of the joint appendix, which is the second-third page of the joint remand in the paragraph that begins on December 15, 2080, and it describes what the Board did. The very last sentence, it seems to me, is the telling part of the VA's implicit concession of error. The Board made no finding as to whether or not the other diagnosis of dementia, NOS, was service-related. That's the concession of error. It is clearly made, it doesn't say, based upon the holding in Clemens. The discussion of Clemens covered the first page and a half of the document, but then there is a description of what the Board did and, most importantly, a description of what the Board did not do. Unless there are further questions from the panel, I will relinquish the balance of my time. Thank you very much.